IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ARTHUR T. WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | CV-2007-520-WHA |
| ALABAMA FARMERS COOPERATIVE, INC., ) | |
| d/b/a BONNIE PLANT FARMS, ) | |
| ) | |
| Defendant. ) | |

**BONNIE PLANT FARMS' REPLY BRIEF IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

COMES NOW defendant Alabama Farmers Cooperative d/b/a Bonnie Plant Farms ("Bonnie"), and submits the following reply brief in further support of its motion for summary judgment. Plaintiff effectively concedes in his opposition brief that he cannot establish a prima facie case of discrimination or retaliation as it relates to any of his route assignments. Indeed, he completely fails to respond to numerous of Bonnie's legal arguments that mandate summary judgment in its favor. Although Bonnie's initial brief fully demonstrated its entitlement to summary judgment, several glaring deficiencies in plaintiff's case are reiterated below, as are some of the more egregious contentions plaintiff makes in his opposition brief.

**A.     Plaintiff Has Abandoned His Claim That His Transfers From Donaldsonville To Jasper, And Later From Jasper To Beeville, Were Discriminatory Or Retaliatory**

The gist of plaintiff's Complaint is he is upset because Joe Stuart, plaintiff's sixty-five (65) year-old supervisor and friend since college, did not reassign plaintiff to the Bells, Tennessee route after the 2005 season. Plaintiff claims this decision was based on his age, or,

alternatively, in retaliation for complaining of alleged age discrimination. Bonnie has demonstrated why this claim fails a matter of law.

Bonnie also set forth in its initial brief why plaintiff's subsequent reassignments from Donaldsonville, Louisiana to Jasper, Alabama and then from Jasper, Alabama to Beeville, Texas were, as a matter of law, neither discriminatory nor retaliatory. (See Bonnie's Br., pp. 26-28). Among other reasons, these reassignments were not adverse employment actions. See Turley v. SCI of Ala., 190 Fed. Appx. 844, 847 (11th Cir. 2006), cert. denied, 127 S. Ct. 1264 (2007); Scarborough v. Mineta, 2006 WL 931859, at *7 (N.D. Fla. Apr. 10, 2006) (citing Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1454 (11th Cir. 1998)). With respect to plaintiff's move from Donaldsonville to Jasper, the undisputed evidence is that the transfer was an opportunity for plaintiff to make more money and that plaintiff was appreciative of the opportunity. (Stuart Depo., pp. 45:20-46:17). With regard to plaintiff's subsequent move from Jasper to Beeville, the undisputed evidence is that plaintiff had been assigned to Jasper only temporarily, yet the Beeville route is one that plaintiff works to this day. (Padgett Depo., pp. 42:20-43:2; Stuart Depo., p. 46:18-20). Again, plaintiff was appreciative of the transfer. (Pltf. Depo., p. 99:11-18).

In his opposition brief, plaintiff (understandably) sets forth no argument whatsoever as to how these assignments were "adverse," nor any reason why summary judgment as to these claims should not be granted. Thus, because plaintiff has now clearly limited his argument to the Bells decision, any other claims he might have asserted (whether for alleged discrimination or alleged retaliation) should be dismissed as a matter of law.

B.  **Plaintiff's Discrimination And Retaliation Claims Related To The Bells Decision Still Fail As A Matter Of Law**

Although plaintiff focuses his opposition brief solely on Stuart's decision not to return him to Bells after the 2005 season, he nonetheless fails to address many of the points that

mandate summary judgment in Bonnie's favor on this claim. And, even where he does address Bonnie's legal arguments, he fails to create a genuine issue of fact.

First, plaintiff completely ignores the fact that any claim related to Bells is time-barred. The undisputed facts show that plaintiff learned during the first week of November 2005 that he would not be returning to Bells, yet he did not file his EEOC Charge until June 6, 2006, which was well over 180 days later. (See Pltf. Depo., p. 109:2-9; Pltf's EEOC Charge). Under the law, any claim related to this decision, whether for discrimination or retaliation, is time-barred. See, e.g., National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); Delaware State College v. Ricks, 449 U.S. 250, 258-59 (1980); Calhoun v. Federal Nat'l Mortgage Ass'n, 823 F. 2d 451, 455-56 (11th Cir. 1987); Welty v. S.F. & G., Inc., 605 F. Supp. 1548, 1554-57 (N.D. Ala. 1985).

Further, plaintiff fails to raise a genuine issue of fact as to whether he was qualified for the position of a route salesman when Stuart made the decision about Bells in the Fall of 2005. Plaintiff has admitted he was not released to return to work at that time. (Pltf. Depo., pp. 124:21-125:22, 226:10-227:17). Rather, he was not released back to work until February 2006. (Pltf. Depo., pp. 124:21-125:22, 226:10-27:17; 02/02/06 Letter). Plaintiff **argues** in his opposition brief that he had in fact been released back to work at the time the Bells reassignment was made, (See Pltf. Br., pp. 6, 12), but the undisputed **facts** prove otherwise. Because the undisputed facts show that plaintiff could not perform the job of a route salesman at the time the Bells decision was made, he cannot establish a prima facie case of age discrimination and his claim should be dismissed. See, e.g., Barket v. Nextira One, 72 Fed. Appx. 508, 511 (8th Cir. 2003); Hypes v. First Commerce Corp., 3 F. Supp. 2d 712, 723 (E.D. La. 1996), aff'd, 134 F.3d 721 (5th Cir. 1998).

Finally, with respect to plaintiff's claim that Stuart's decision about the Bells route was unlawful retaliation, it remains undisputed that Stuart made the decision **before** plaintiff ever complained of discrimination. (Pltf. Depo., pp. 42:21-44:18, 109:2-9, 110:6-9). Although plaintiff attempts in his opposition brief to argue that he complained of discrimination at the November 2005 meeting when Stuart told plaintiff he would not be returning to Bells, this assertion is contradicted by plaintiff's own deposition testimony where he admitted he first complained of discrimination in January 2006. (Pltf. Depo., p. 110:10-17). Even allowing plaintiff to contradict himself and claim that he complained to Stuart in November 2005, the fact remains that it was only **after** Stuart told plaintiff he would not return to Bells that plaintiff made any alleged complaint. In other words, plaintiff's alleged complaint of discrimination was a **reaction** to what Stuart told him. Thus, as a matter of law, Stuart did not make his decision **because of** any alleged complaint from plaintiff. See, e.g., Vinnett v. General Elec. Co., 2008 WL 834456, at *5 (11th Cir. Mar. 31, 2008) ("There is also a lack of a causal connection when an employer makes a decision before the protected activity occurs and then proceeds with that decision."); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).

In sum, given these and other of plaintiff's concessions and failures of proof, any claim related to the Bells decision must be dismissed as a matter of law.

C. **Plaintiff Limits His Brief To An Argument About The Existence Of Pretext, But Fails To Offer Evidence Of Pretext Sufficient To Avoid Summary Judgment**

Because plaintiff cannot establish a prima facie case of discrimination or retaliation, the Court therefore need not even proceed to an analysis of whether Bonnie's proffered reasons for its actions were pretextual.[1] Even if it did, plaintiff still could not avoid summary judgment.

---

[1] Plaintiff concedes that he has no direct evidence or statistical evidence of discrimination.

Bonnie has met its burden to show that its actions toward plaintiff were taken because of his poor job performance and customer complaints, and plaintiff, for his part, has failed to show that those reasons are untrue and that the real reason was discrimination or retaliation.

### 1. A Recap Of Plaintiff's Poor Job Performance

The evidence before the Court is that plaintiff had numerous work-related problems both in Bells and in subsequent locations he has worked. In Bells, for example, the stores on his route were often in disarray, his stores were not kept neat, he did not pick-up trash as he should have, he did not remove plants that were not selling, and he did not keep his truck clean. (Alley Depo., pp. 33:2-34:4, 40:7-17, 50:23-51:12). Alley, the Station Manager, received numerous complaints from plaintiff's customers, as did Joe Stuart. (Alley Depo., pp. 41:9-42:7; Stuart Depo., pp. 25:6-21 41:9-43:10). Plaintiff's customers also told Stuart that they would see plaintiff asleep outside in the truck. (Stuart Depo., p. 41:9-14). Similarly, during plaintiff's time in Jasper, numerous customers called Joey Padgett to complain about his job performance, including that they had not seen plaintiff in a long time and were therefore out of certain types of plants. (Padgett Depo., pp. 30:12-19; 31:11-22). Padgett testified that he had never had so many complaints about a salesman. (Padgett Depo., pp. 31:23-32:5). Plaintiff himself admits that certain criticisms from Padgett were "very much so justified." (Pltf. Depo., p. 195:13-17). Plaintiff's problems also persist in his current job in Beeville, where customers have complained about plaintiff's job performance to Stuart and the Station Manager, Chris Hall. (Stuart Depo., pp. 61:3-18, 70:15-23). Plaintiff admits Hall has counseled him about his job performance and admits that Hall's criticisms have been justified. (Pltf. Depo., p. 189:8-10).

## 2. Plaintiff's Arguments Do Not Prove Pretext

Despite consistent and uncontradicted testimony about plaintiff's job performance, plaintiff makes three arguments in his opposition brief as to why the Court should find this evidence to be pretextual. None of these arguments gets him past summary judgment.

First, plaintiff argues that a lack of **written** discipline proves pretext. However, as Bonnie has already pointed out and as plaintiff admits in his brief, Bonnie had no system for written discipline or review of route salesmen. (Alley Depo., pp. 30:21-23, 37:16-21; Stuart Depo, pp. 17:19-18:3). Therefore, the lack of written documentation regarding performance problems or customer complaints is irrelevant and is not evidence of pretext. See, e.g., Wascura v. City of South Miami, 257 F.3d 1238, 1245 (11th Cir. 2001).

Plaintiff next argues that -- contrary to the deposition testimony of Joe Stuart, Adam Alley, Joey Padgett, and plaintiff himself -- he actually had no job performance problems or customer complaints. In this regard, plaintiff submits Declarations from two individuals, yet neither Declaration creates a genuine issue of disputed fact. The first Declaration is from David Boswell of Boswell Feed & Seed in Tennessee. Joe Stuart testified at deposition that Frank Boswell (David Boswell's father) was one of the numerous customers who had complained about plaintiff's job performance. Plaintiff subsequently had David Boswell sign a Declaration for this lawsuit, but the Declaration states little more than that Frank Boswell is now incapacitated and that Boswell Feed & Seed has in the past called Bonnie to report plant shortages. (See Boswell Decl. ¶ 3) David Boswell's Declaration certainly **does not** contradict Stuart's testimony that Frank Boswell lodged a complaint about plaintiff. The other Declaration is from Bobby Winders at Farmers Cooperative, also in Tennessee. In essence, Winder states in his Declaration only that he lacks **personal knowledge** of anyone at Farmers Cooperative calling Bonnie to complain

about plaintiff. (See Winders Decl. ¶ 3). Again, this **does not** contradict Stuart's testimony that someone from Farmers Cooperative complained about plaintiff. In any event, complaints from these two customers were not the only basis for Bonnie's decision. These were just two of the complaints that Stuart (the National Sales Manager) received directly from customers. Other customers had also complained to both Alley and Stuart, and Alley had voiced to Stuart his overall displeasure with plaintiff's performance. (Alley Depo., pp. 33:2-34:4, 40:7-17, 41:9-42:7, 42:21-43:4, 50:8-51:12; Stuart Depo., pp. 25:6-21, 32:1-33:15; 41:9-43:10). Thus, even if these Declarations actually raised any genuine dispute as to whether certain customers called Stuart, plaintiff has not shown -- as he claims to have done -- that Alley and Stuart are "lying" when they testify that customers complained about plaintiff, that plaintiff did not perform his job properly, and that they had legitimate problems with his work performance.[2] Moreover, these Declarations do not indicate that discriminatory or retaliatory animus was the real reason for Bonnie's decision, which of course is what plaintiff must show to avoid summary judgment.[3]

---

[2] Plaintiff also submits his own Declaration in which he tip-toes delicately around the issue of his poor job performance. For example, with respect to his time in Bells, plaintiff states in his Declaration that he never received a "write up or a counseling form because of any complaints about [his] job performance," and that "he was never made aware of any complaint by Adam Alley … concerning [his] job performance." (Pltf. Decl. ¶ 4). With regard to his performance in Jasper, plaintiff admits that Joey Padgett "occasionally gave [him] notes where customers had called in requesting that [he] leave specific varieties of plants," and then goes on to say that "no one ever called and complained about [his] job performance to [his] knowledge." (Pltf. Decl. ¶ 6). The fact that customers did in fact complain -- and the fact that plaintiff's supervisors did in fact have problems with plaintiff's work performance -- remains undisputed despite these statements in plaintiff's Declaration.

[3] Given that Alley specifically requested of Stuart that plaintiff not be returned to Bells, there is also no evidence that Stuart lacked a good faith belief that plaintiff had performance problems. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989) ("The law is clear that, even if a [plaintiff] did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation."). Plaintiff's pretext argument fails for this additional reason.

Finally, plaintiff argues that summary judgment should be denied because Bonnie did not state in its EEOC position statement that plaintiff's poor job performance and customer complaints were the reason for his transfer from Bells. (See Pltf. Br., pp. 13-14). Neither the facts nor the law support the argument that summary judgment should be denied on this basis. As an initial matter, plaintiff insinuates in his opposition brief that Stuart was somehow involved in drafting Bonnie's EEOC response, but the deposition testimony plaintiff cites does **not** support that insinuation. (See Stuart Depo., pp. 55:1-56:13). Rather, as Bonnie has already pointed out, Tate Gatlin -- not Joe Stuart, Adam Alley, or any other supervisor of plaintiff -- was the individual who drafted Bonnie's EEOC response. It is undisputed that Gatlin, who is Bonnie's Safety Director, was not a decisionmaker regarding any of plaintiff's route assignments. Admittedly, plaintiff has a good argument that Tate Gatlin should have done a better job investigating the facts and consulting with the knowledgeable decisionmakers before he drafted Bonnie's EEOC position statement. What plaintiff does not have is evidence that poor work performance and customer complaints are actually just pretext for unlawful discrimination. See Bothwell v. RMC Ewell, Inc., 2008 WL 2123340, at *4 (11th Cir. May 21, 2008) ("[T]he proffer of two legitimate reasons for an adverse employment action does not prove that the action was motivated by neither."); Robinson v. LaFarge North America, Inc., 240 Fed. Appx. 824, 827 (11th Cir. 2007) ("A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'") (citing cases). Plaintiff's argument regarding Bonnie's EEOC position statement is essentially a red herring designed to distract the Court from plaintiff's own failures of proof, and it is not a sufficient basis for denying Bonnie's motion for summary judgment.

### 3. **Plaintiff Ignores Many Of The Damaging Facts That Disprove Pretext**

Just as with the rest of his opposition brief, plaintiff's arguments on the issue of pretext are most noteworthy for what they do not address. For example, plaintiff does not address the fact that the statistical evidence in this case (*i.e.*, the ages of the salesmen who run the routes in Bells and the number of individuals over fifty (50) and sixty (60) years old who Bonnie hires as route salesmen) is a very strong indication that no age discrimination occurred. See Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991) ("In short, employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing."); see also Wheeles v. Nelson's Elec. Motor Servs., 2008 WL 2358734, at *10 (M.D. Ala. June 6, 2008).

Nor does plaintiff offer any explanation as to why Joe Stuart, plaintiff's college friend who is two (2) years older than plaintiff, would discriminate against plaintiff because of his age. Under the law, of course, the fact that Stuart is older than plaintiff is also a strong indication that no discrimination occurred. See Henry v. Jefferson County Pers. Bd., 519 F. Supp. 2d 1171, 1187 (N.D. Ala.) ("The Eleventh Circuit has noted that an employee 'face[s] a difficult burden' of showing discriminatory motive in an age discrimination case when the primary decisionmaker was 'well over age forty and within the class of persons protected by the ADEA.'"), aff'd, 252 Fed. Appx. 308 (11th Cir. 2007) (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991)).

Plaintiff also ignores the strong "same actor" inference in this case. The undisputed evidence regarding Stuart's treatment of plaintiff is that: Stuart was the individual who, when plaintiff at the age of fifty-eight (58) requested a different route that would be easier on him, approved the request; Stuart was the individual who, after plaintiff's problems in Bells, created a

job for plaintiff in Donaldsonville so plaintiff would not lose his insurance;[4] Stuart was the individual who subsequently offered plaintiff an open route in Jasper so he could have a chance to make more money; and Stuart was the individual who then found plaintiff a route in Beeville, Texas. This evidence about Stuart's favorable treatment of plaintiff and efforts to keep plaintiff on the payroll rebuts any inference of discrimination. See, e.g., Barket v. Nextira One, 72 Fed. Appx. 508, 511 (8th Cir. 2003) (affirming summary judgment where the evidence was that "the same decision-makers that terminated [the plaintiff] had diligently worked to keep him on the payroll only a short time before"); see also Dingman v. Delta Health Group, Inc., 26 F. Supp. 2d 1349, 1354-55 (S.D. Fla. 1998).

Finally, another glaring omission in plaintiff's opposition brief is his complete failure to come forward with a comparator. Bonnie showed in its initial brief that there is no evidence that substantially younger employees had similar customer complaints, similar sales numbers, and similar performance problems, yet were treated better than plaintiff. Plaintiff in his opposition brief improperly tries to shift the burden to Bonnie to point out a comparator. (See Pltf. Br., p. 15). It is plaintiff, however, who has this burden. He has not even attempted to meet it, and without such evidence his claims should be dismissed. See Johnson v. Atlanta Indep. Sch. Sys., 137 Fed. Appx. 311, 314 (11th Cir. 2005); Thomas v. Aventis Pharm., Inc., 177 Fed. Appx. 54, 57 (11th Cir. Apr. 18, 2006).

---

[4] In this regard, it is important to remember plaintiff's own testimony in this case where he admitted to telling numerous individuals that the only reason he continues to work at Bonnie is for his health insurance. (Pltf. Depo., pp. 85:21-87:16).

**D.**     **Conclusion**

In sum, plaintiff cannot establish a prima facie case of discrimination or retaliation. Apparently realizing that, plaintiff in his opposition brief tries to distract the Court with arguments about pretext. The Court need not even get to the issue of pretext in order to dispose of plaintiff's claims. And, even if the Court were to indulge plaintiff by entertaining his pretext arguments, summary judgment in Bonnie's favor would still be warranted, as plaintiff's "evidence" of pretext is insufficient to withstand summary judgment. For all of the foregoing reasons, and for the reasons set forth in its initial brief, Bonnie respectfully requests that the Court enter summary judgment in its favor, dismiss plaintiff's claims in their entirety, and tax costs against plaintiff.

Respectfully submitted,

s/ Graham W. Gerhardt
Dent M. Morton (MOR058)
K. Bryance Metheny (MET011)
Graham W. Gerhardt (GER014)
Attorneys for Defendant

**OF COUNSEL**:

**BURR & FORMAN LLP**
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system on the following CM/ECF participants, on this the 24th day of July 2008:

    Albert Holman Adams, Jr.
    Albert H Adams, Jr., PC
    P. O. Box 670
    Eufaula, AL  36072-0670

    Jerry Dean Roberson
    3765 Kincross Drive
    P.O. Box 380487
    Birmingham, AL 35238

                                          s/ Graham W.Gerhardt _____
                                          OF COUNSEL