IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ARTHUR T. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:07cv520-WHA |
| | ) | |
| | ) | (WO) |
| ALABAMA FARMERS COOPERATIVE, | ) | |
| INC. d/b/a BONNIE PLANT FARMS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment (Doc. # 22) filed by Defendant Alabama Farmers Cooperative, Inc. d/b/a Bonnie Plant Farms ("Bonnie Plant") on June 26, 2008.

The Plaintiff, Arthur Watson ("Watson"), filed a Complaint in this case bringing claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.

The Defendant, Bonnie Plant, has moved for summary judgment as to all of Watson's claims.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The summary judgment rule is to be applied in employment discrimination cases as in any other case. *Chapman v. A1 Transport*, 229 F.3d 1012, 1026 (11th Cir. 2000)(*en banc*).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Watson is a sixty-three year-old salesman currently employed by Bonnie Plant. He has worked in the plant business for twenty-five years including ten years for Joe Stuart ('Stuart") directly and fifteen years for Bonnie Plant after it acquired Stuart's company. Watson has been a route salesman, selling plants to Bonnie Plant customers for fifteen years. Bonnie Plant employs several hundred salesmen throughout the United States. The salesmen operate from stations. Each station is supervised by a station manager. Stuart is Bonnie Plant's National Sales Manager, and oversees the route salesmen and station managers.

Bonnie Plant salesmen drive Bonnie Plant trucks and sell and deliver plants to customers. Some routes have two seasons and some routes have one season. In between seasons the salesmen are laid off and eligible for unemployment compensation. Plants are sold on consignment, with route salesmen paid for what is actually sold. At the end of each season, the Station Manager reviews the performance of his route salesmen and discusses performance with the sales person. There is no written evaluation of the salesmen.

During the 1990's and until 2003, Watson worked a sales route in New Summerfield, Texas, first as an employee of Stuart's business, and then as a Bonnie Plant employee when Stuart's business was sold to Bonnie Plant.

In 2003, Watson requested that he be allowed to swap routes with a salesman in Bells, Tennessee because he was going to need knee replacement surgery and the Bells, Tennessee route, unlike the Summerfield route, only had a spring season. The request was approved. Watson worked the Bells, Tennessee sales route ("Bells route") in 2004 and 2005. Stuart has testified that the Station Manager for the Bells route, Adam Alley ("Alley"), received numerous complaints about Watson. Stuart testifies that Alley asked Stuart that Watson not be returned to Bells for the 2006 season. Watson states that he was never aware of any customer complaints and that the complaints identified by Bonnie Plant are unsubstantiated.

In November 2005, Stuart told Watson that he would not be returning to the Bells route in 2006. Watson states in his deposition that when Stuart said Watson would not be returned to the Bells route, Watson told Stuart that Watson's age probably had "a factor in this decision." Watson Dep. at page 45: 9-10.

Alley offered Les Branum the Bells route which Watson had worked. Branum was twenty-nine when he accepted the route.

Near the time that the decision was made not to return Watson to the Bells route, Watson had surgery for bone spurs and knee replacement surgery.

In January 2006, Albert Adams, an attorney, wrote a letter to Bonnie Plant on Watson's behalf in which he stated that Watson did not understand why his Bells route was being given to someone else, unless it was because Watson turned 61 years old on January 12, 2006. This letter was addressed to Tate Gatlin, Bonnie Plant's Safety Director.

Watson was released back to work after his surgery in February 2006. Watson brought a letter to Tate Gatlin on February 2, 2006 which stated that he had been unable to work since his

surgeries and asked to be returned to his Bells route, or else he would hire a lawyer because he believed he was being discriminated against on the basis of age. Watson states that since he has filed age discrimination complaints he has lost commissions, earned less income, and lost other employment benefits.

Stuart testified in his deposition that he created a position for Watson in Donaldsonville, Louisiana in February 2006, which was not a sales route ("Donaldsonville"). Watson worked there for three weeks. At the end of those three weeks, Stuart called Watson and said that a sales route had become available in Jasper, Alabama because a salesman had left before the end of the season. Watson accepted that the Jasper, Alabama route ("Jasper route").

Joey Padgett ("Padgett") was the Station Manager in Jasper in 2006. Padgett received customer complaints about Watson while Watson was working the Jasper route. Padgett Dep. at page 30: 17-19. At the end of the season, Padgett said that he did not want Watson back for the next season. Padgett hired Chris Sparks, who was thirty-five years old, to work the Jasper route.

Stuart offered Watson a route in Beeville, Texas ("Beeville route") for Spring 2007. Watson is still working the Beeville route.

## IV. DISCUSSION

Although Watson has pled only one count entitled Age Discrimination and Retaliation in the Complaint, Bonnie Plant has moved for summary judgment as if several separate age and retaliation claims have been asserted. The court begins with the age discrimination claims and then will turn to the retaliation claims.

### A. Claims of Age Discrimination

A plaintiff may establish a claim of illegal age discrimination through either direct or circumstantial evidence. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of age under the ADEA by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000).

A plaintiff may establish a prima facie case of discrimination under the ADEA by demonstrating that he was (1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

Bonnie Plant has identified three possible employment actions which may form the basis of Watson's age discrimination claims. Watson's response to the motion for summary judgment indicates that his theory of liability is that the decision not to return him to the Bells route was an adverse employment decision, and that all transfers after that decision are part of that adverse action. In its reply, Bonnie Plant argues that Watson has abandoned any claim based on his transfer from the Jasper, Alabama route to the Beeville route. The court is not convinced that Watson has abandoned such a claim. While Watson does not clearly refer to this transfer as a separate claim, he does refer to his replacement on the Jasper route as a younger comparator. Therefore, while it appears that Watson intended to only assert one claim, to the extent that a separate claim has been brought based on the transfer from Jasper to Beeville, the court cannot conclude that he has abandoned that claim, and will analyze those two transfers as being the basis of his age discrimination claim. The court will not analyze the transfer from Donaldsonville to Jasper because Watson makes no attempt in his response to substantiate a separate claim based on that transfer.

1. Bells Route to Donaldsonville Transfer

Bonnie Plant first contends that any claim based on Watson being transferred from the Bells route to Donaldsonville in 2006 is time-barred.

An employee seeking to bring suit against his employer under the ADEA must first file an administrative charge of discrimination with the EEOC. *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1263 (11th Cir.2003). In Alabama, a plaintiff's ADEA claim must have been brought to the EEOC within 180 days of the adverse employment action challenged in the claim. *Id*.

7

Watson has testified that on election day in November 2005, Stuart told him Watson would not be returning to the Bells route. Watson Dep. at page 43: 1-18. Watson did not file an EEOC charge until June 6, 2006. *See* Defendant's Exhibit 17.

Watson offers no response to Bonnie Plant's argument that this claim is time-barred. Watson does, however, in the context of his retaliation claim, state that the reassignment was made in February. Even though the reassignment to Donaldsonville may have been made at that time, even under Watson's testimony, he was told in November 2005 that he would not be re-assigned to Bells. "[T]he actual *decision* to terminate, and giving notice to the employee of that decision, are the relevant illegal acts under the ADEA." *Thomas v. Dillard Dept. Stores, Inc.*, 116 F.3d 1432, 1434 n.4 (11th Cir. 1997) (emphasis in original). The 180-day period is counted from the decision, and not the effects of that decision. *Cocke v. Merrill Lynch & Co., Inc.*, 817 F.2d 1559, 1561 (11th Cir. 1987). Watson having provided no evidence or argument to support equitable tolling, *see id.*, Watson's claim based on the decision not to re-assign him to the Bells route is time-barred and summary judgment due to be GRANTED as to this discrimination claim.

2. Jasper Route to Beeville Route Transfer

Watson was offered the Jasper route as a fill-in for a salesman who quit his position. His station manger, Padgett, subsequently hired a thirty-five-year-old named Chris Sparks for the Jasper route at the end of the season. Watson was given a route in Beeville, Texas.

Bonnie Plant disputes that the move from the Jasper route to the Beeville route can be considered an adverse employment action. Watson argues, in the context of his retaliation claim, that he suffered a loss of income, so that the transfers he received were adverse. While Watson

responds generally that he has suffered a loss of income, he does not specifically address whether the transfer to Beeville was an adverse employment action. Watson's position appears to be that because he makes less money now than he did when he was assigned the Bells route, he has established an adverse employment action. In other words, he seeks to have the court view every transfer which has occurred since he was transferred from the Bells route to Donaldsonville as part of the same adverse employment action, which has resulted in a diminution of income and benefits.

The Supreme Court has rejected this view of employment acts, albeit in the context of limitations periods. The Court has explained that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). The transfer to Beeville standing alone, therefore, must constitute an adverse employment action in order to be a basis for liability.

The Eleventh Circuit has recently reiterated that for purposes of a discrimination claim under the ADEA, an adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Van Voorhis v. Hillsborough County Bd. of County Com'rs,* 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)).

Watson has cited to deposition testimony where he states that he did not receive any commission when he worked the Jasper route. Watson Dep. at page 70: 3-16. While there may be a dispute of fact as to whether he could have earned commissions on the Jasper route, Watson has not pointed the court to any evidence that he is unable to earn commissions on the Beeville route. The evidence before the court, in fact, is that Watson earns commissions on the Beeville route. Stuart Dep. at page 64:1-5. Therefore, even accepting Watson's evidence regarding the Jasper route as true, as the court must in ruling on a motion for summary judgment, when he was transferred to the Beeville route, Watson was transferred from a temporary assignment where he did not earn commissions to a permanent route on which he could earn commissions. The court must conclude that, viewing the evidence in a light most favorable to Watson, the transfer to Beeville was not an adverse employment action and that summary judgment is due to be GRANTED on that basis.

Bonnie Plant further argues that even if Watson could establish a prima facie case of age discrimination based on the transfer from Jasper to Beeville, there is a legitimate, non-discriminatory reason for the transfer: poor work performance. In his response to the Motion for Summary Judgment, Watson disputes that there were complaints about his work performance, and points to evidence which he contends demonstrates that such complaints did not exist. This evidence concerns the Bells route, however, and does not speak to work performance on the Jasper route. Watson also argues that Bonnie Plant's response to the EEOC charge stated that he had missed a sales meeting, which he had not missed, but, again, that was in response to an EEOC charge filed when he was not returned to the Bells route. Watson has further argued that all of the criticism of his job performance is unsubstantiated, but Watson

10

testified in his deposition that Padgett was critical of his job performance on the Jasper route, telling him that he needed to leave six packs of plants in some places, and that the criticism was "very much so justified." Watson Dep. at page 195: 8-17. Therefore, the court finds that summary judgment is due to be GRANTED on the alternative basis that he has failed to establish pretext.

### B. Claims of Retaliation

A prima facie case of retaliation under the ADEA requires a plaintiff to establish (1) that he engaged in statutorily protected conduct, (2) that he suffered an adverse employment action, and (3) a causal link. *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999).

#### 1. Bells Route to Donaldsonville Transfer

Bonnie Plant argues that there is no causal connection between the decision not to re-assign Watson to the Bells route and any protected activity. A close temporal proximity between the protected activity and the adverse action may be sufficient circumstantial evidence of a causal connection. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). The court must also examine, however, whether the decision maker had notice of the protected activity. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207-08 (11th Cir.2001). "There is also a lack of a causal connection when an employer makes a decision before the protected activity occurs and then proceeds with that decision." *See Vinnett v. General Elec. Co.,* 271 Fed. Appx. 908, 914, 2008 WL 834456, 5 (11th Cir. March 31, 2008) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, (2001)).

Watson admitted in his deposition that he was told by Stuart that Watson would not be returned to the Bells route before Watson made any complaint of age discrimination. Watson testified in his deposition that after he was told of the decision, he said that age had a factor in the decision. Watson Dep. at page 45: 10-11. Under Watson's own testimony, therefore, he complained of discrimination in a meeting with Stuart after Stuart had already decided, and communicated the decision to Watson, not to re-assign him to the Bells route. Therefore, the undisputed evidence is that there was no causal connection between any complaint of discrimination and the decision to transfer Watson from the Bells route, and summary judgment is due to be GRANTED on this claim on that basis.

2. Jasper Route to Beeville Route Transfer

Bonnie Plant argues that there can be no causal connection in the transfer from the Jasper route to the Beeville route because there is no evidence that the decision maker was aware of the protected activity. As stated above, however, Watson communicated an oral complaint of discrimination to Stuart. To the extent that Stuart was the decision maker for the Beeville route transfer, therefore, summary judgment cannot be granted on that basis.

Bonnie Plant appears to take the position that Padgett, not Stuart, is the relevant decision maker for the transfer to Beeville. Watson points to no evidence that Padgett was aware of any complaints of discrimination by Watson. Stuart testified in his deposition that Padgett hired someone else and expressed that he would prefer that he did not hire Watson. Stuart Dep. at page 60: 12-18. Padgett testified that he never requested that Watson be transferred because he was never hired by Padgett. Padgett Dep. at page 42. Padgett hired Chris Sparks when the season Watson was filling in for ended. *Id.* at page 43: 7-14. It is unclear whether Chris Sparks

or Stuart is the relevant decision maker, so the motion for summary judgment cannot be granted on the basis of the lack of a causal connection as to this claim.

Bonnie Plant also argues, however, as discussed above, that the Jasper route to Beeville route transfer was not an adverse employment action. The Supreme Court has defined a materially adverse action in the context of a retaliation claim as one that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Railway Co. v. Sheila White*, 548 U.S. at ----, 126 S.Ct. 2405, 2415 (2006).

Although the *Burlington* standard for adverse employment action appears broader than the adverse employment action standard applied to a disparate treatment claim, which this court concluded above has not been met with regard to the Jasper route to Beeville route transfer, the court must conclude that the broader *Burlington* standard also is not met. As stated above, the law views each transfer as a separate employment action. Watson has not presented sufficient evidence that the transfer from the temporary Jasper route to the Beeville route, which allowed him to earn commissions, was adverse to any degree, much less to a degree which would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Additionally, the same analysis of the lack of evidence of pretext which supports summary judgment as to the age discrimination claim for transfer to the Beeville route also applies to the retaliation claim. Therefore, the court concludes that summary judgment is also due to be GRANTED as to the retaliation claim based on the transfer from the temporary Jasper route to the Beeville route.

## V. CONCLUSION

The Plaintiff, Watson, subjectively perceives, although without evidentiary foundation, that a company with which he has had a good working relationship for many years has violated

employment discrimination law.  As set forth in detail above, however, due to Watson's failure to meet statutory timing requirements, and failure to provide sufficient evidence of an adverse action of discrimination or retaliation, Bonnie Plant is entitled to summary judgment on all claims.  Accordingly, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Doc. #22) is GRANTED.  A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

 Done this 12th day of August, 2008.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE